## Walter's Executor, Appellant, *v.* Martin et al.

*Deeds—Vendor and vendee—Fraud—Consideration—Inadequacy —Rescission—Equity—Exchange of real estate.*

1. Mere inadequacy of consideration, will not justify a rescission of an exchange of real estate, where no fraud is shown.

2. It is not enough to charge fraud and prove in support thereof slight circumstances of suspicion only.

3. A court of equity will not decree a rescission of an exchange of real estate, where it is found as a fact that the complainant, although seventy-eight years old, was mentally competent, that no fraud in law or in fact was committed upon him, and that the consideration for the exchange was not so improvident as to raise a presumption against its validity.

4. In such case, where it appears that complainant secured a good title through defendant, it is immaterial that the latter misrepresented himself as a rich man, and also that he was the owner of the property for which the exchange was made, when in fact he was not.

*Appeals—Statement of question involved.*

5. Where the statement of questions involved contains no reference to a question assigned for error, it will not be considered on appeal.

Argued April 24, 1922.   Appeal, No. 81, Jan. T., 1922, by plaintiff, from decree of C. P. Berks Co., No. 1237, Equity Docket 1919, dismissing bill in equity, in case of Pennsylvania Trust Company, Executor of Robert Walter, deceased, v. Edward W. Martin and Richelieu Holding Company, Inc.   Before MOSCHZISKER, C. J., WALLING, KEPHART, SADLER and SCHAFFER, JJ.   Affirmed.

Bill in equity to rescind deed.   Before ENDLICH, P. J. The opinion of the Supreme Court states the facts. Bill dismissed.   Plaintiff appealed.

*Error assigned,* inter alia, was decree, quoting it.

*William Kerper Stevens* and *John J. McDevitt, Jr.,* with them *Joseph W. Fitzpatrick,* for appellant.

*Jefferson Snyder,* with him *Thos. K. Leidy,* for appellees.

OPINION BY MR. JUSTICE WALLING, June 24, 1922:

At the time here in question Dr. Robert Walter was owner and proprietor of a sanitarium at Wernersville, Berks County, which embraced a main building and twenty smaller structures all located on a tract of about two hundred and seventy-five acres of land, known as "Walter's Park."   It had been a prosperous institution but about 1915 began to deteriorate owing to Walter's advancing years and the scarcity of competent help and supplies; this caused him to endeavor to sell the property and ultimately to place it in the hands of Walter B. Olive, a New York real estate agent.   In the spring of 1918, the defendant, Edward W. Martin, also engaged in the real estate business in the same city, seeing this

property listed for sale, called on Olive and later on Walter with a view of securing it. Martin offered to exchange a piece of improved real estate, situated at the corner of Canal and Baxter streets, New York City, for Walter's Park. After extended negotiations, such an exchange was finally consummated late in the summer of 1918, when deeds were delivered and possession taken. Some months thereafter, Walter brought this suit in equity to compel a reconveyance to him of the sanitarium property, an accounting for the income therefrom and for other relief. The case went to trial upon bill, answer, replication and testimony; from which the chancellor found the controlling facts in favor of defendant and the court below dismissed the bill. Meantime Walter died and his executor brought this appeal.

Walter was seventy-seven years of age when the properties were exchanged, and evidence was submitted, on his behalf, tending to show he was suffering from morbid senility or senile dementia and incompetent to transact business; this was met by convincing evidence to the contrary, especially Walter's own correspondence, and it was properly found as a fact that he was of sound mind.

A further, and very earnestly urged, allegation is that Martin secured title to the sanitarium property by fraud, in that he claimed to be a wealthy man and the owner of the New York property, when he was neither, and also overstated the value of the latter property and of the net income therefrom. As Walter admittedly secured a good title to the New York property through Martin, the question of his personal ownership thereof was immaterial, as was also the question of his wealth. The preliminary contract for the exchange of properties was executed April 12, 1918, and, prior to that time, Walter had inspected the New York property, also secured accurate expert information as to its value and knew Martin was not its owner and did not rely upon what the latter said as to its net income: see Sulkin v. Gilbert, 218 Pa. 255.

We do not find the bargain so shockingly improvident on part of Walter as to raise a presumption against its validity. While the sanitarium property represented an investment of over $200,000, it had become unprofitable and such a burden to carry that Walter had authorized his agent to sell it for $75,000. It was also encumbered to the extent of $22,225, which Martin assumed. The property Walter got in exchange was worth $95,000, and of increasing value, with a mortgage against it of $80,-000; and, in addition to the $15,000 equity in this property, Walter got during his life a cottage, or rooms, for himself and family, in Walter's Park, rent free, with the right to board at the sanitarium at a nominal price, and, as we understand the facts, retained the absolute ownership of ninety-six acres of the park property, valued at $6,000. Martin also guaranteed a net income from the New York property of $6,000 a year for five years, and secured the same by a mortgage upon Walter's Park, as he also did a loan of $20,000 he obtained from Walter. There were several preliminary agreements, but, as finally consummated, the chancellor finds there was probably not much inequality in the contract. He also finds as a fact that there was no fraud; hence, mere inadequacy of consideration, if found, would not justify a rescission of the contract. While there were some suspicious circumstances, yet, taking the evidence as a whole, it is consistent with the chancellor's refusal to sustain the charge of fraud. "It is not enough to charge fraud and prove in support thereof slight circumstances of suspicion only": Mead v. Conroe, 113 Pa. 220.

There was no confidential relation between the parties and nothing to support the suggestion of fraud in law.

The negotiations leading up to the final passing of deeds covered a period of six months, during which the transaction was elaborately considered by Walter, with the assistance of his wife, his attorneys and agents, although, he contended, the real estate agent turned against him. Walter was a frequent visitor in New

York, where he owned other properties, and had full opportunity to examine and investigate the one here in question. The chancellor and court below properly concluded the facts did not warrant the relief prayed for. Neither Walter, nor any one representing his estate, offered to return the New York property; but it is not necessary to consider the effect thereof, as the bill was rightly dismissed on other grounds.

It is not of controlling importance that the money used to secure the equity in the New York property, and pay off the municipal liens against it, came from the $20,000 which Walter loaned Martin, as it was the latter's money that paid them, the same as if he had secured it elsewhere.

The sixteenth, seventeenth and eighteenth assignments of error, based upon the chancellor's exclusion of certain offers of evidence, were not urged at bar, and, as there is no reference thereto in the statement of questions involved, need not be considered.

The decree is affirmed and appeal dismissed at the costs of appellant.